UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 17-CR-630 (ER) |
| v. | September 10, 2018 |
| MARK SCOTT, | 500 Pearl Street, New York, New York |
| Defendant. | |

TRANSCRIPT OF CRIMINAL CAUSE FOR INITIAL APPEARANCE
ARRAIGNMENT AND BAIL HEARING
BEFORE THE HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government: JULIETA LOZANO, ESQ.
United States Attorney's Office,
One Saint Andrew's Plaza
New York, New York 10007

For the Defendant: ARLO DEVLIN-BROWN, ESQ.
Covington & Burling
620 Eighth Avenue
New York, New York 10018

Court Transcriber: SHARI RIEMER, CET-805
TypeWrite Word Processing Service
211 N. Milton Road
Saratoga Springs, New York 12866

Proceedings recorded by electronic sound recording, transcript produced by transcription service

THE CLERK: United States v. Mark S. Scott, Case No. 17-CR-630.

Counsel, please state your appearance.

MS. LOZANO: Good afternoon, Your Honor. Julieta Lozano for the Government, and with me is Special Agent Ron Schimkow from the FBI.

THE COURT: Good afternoon.

MR. DEVLIN-BROWN: Good afternoon, Your Honor. Arlo Devlin-Brown of Covington & Burling for Mark Scott.

THE COURT: Good afternoon. Can I have the date and time of arrest, please?

MS. LOZANO: Yes, Your Honor. Mr. Scott was arrested on September 5th, last Wednesday, in Barnstable, Massachusetts at 6:55 a.m. based on an indictment out of the Southern District of New York an arrest warrant corresponding with that indictment. At that time he was brought before a district court in Massachusetts. He waived objection of his identification as the person in the arrest warrant and a detention hearing was set for this past Friday, December -- I'm sorry, September 7th.

However, the defendant before that date waived his rights to a detention hearing in the District Court of Massachusetts and consented to be transported back to the Southern District of New York. That happened last Friday, September 7th. He was put on a bus as I understand at ten

a.m. and transported to the Southern District arriving here late Friday evening after court was closed.

In addition -- so it was too late for the cutoff for court so he was scheduled to appear today before Your Honor. At this --

THE COURT: Why wasn't he presented on Saturday?

MS. LOZANO: Excuse me?

THE COURT: Why wasn't he presented on Saturday?

MS. LOZANO: According to the Marshals, the Marshals indicated that because they -- the transport was dropping Mr. Scott at the Bureau of Prisons at MDC that the Marshals no longer had control and knew when he was going to be here and they were unable to bring him to court on Saturday. We did request to have a Saturday presentment and we were told by the Marshals that that was impossible and he would be presented today.

THE COURT: Are you done with your presentation?

MS. LOZANO: Your Honor, I also would like to give a little background about the circumstances of the arrest. It was also a search warrant executed in Massachusetts and a search warrant executed in Florida on the same day of the arrest.

I'm happy to give the Court some background about this case if the Court would like to hear that now. And the People's request that Mr. Scott be detained because he is a

serious flight risk.

THE COURT: I'll hear the matter of bail in a few moments.

Mr. Scott, the purpose of the proceeding is to advise you of certain rights that you have, to inform you of the charge made against you, to consider whether counsel should be appointed for you and to determine under what conditions, if any, you might be released. Do you understand, sir?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: You have a right to remain silent. Even if you've made statements to authorities already you need not make additional statements. Anything that you do say can be used against you.

You have a right to be released either conditionally or unconditionally pending trial unless I find that there are no conditions that would reasonably assure your presence in court and the safety of the community.

You have a right to be represented by counsel during all court proceedings and during all questioning by authorities. If you're not able to retain counsel the court will appoint counsel to represent you. You're here with retained counsel this afternoon. Is that correct, sir?

THE DEFENDANT: That's correct, Your Honor.

THE COURT: Should your circumstances change and

you're no longer able to retain counsel you should advise the Court of that change in your circumstances so that counsel can be appointed for you.

You have been named in an indictment returned by a grand jury in this judicial district.

Ms. [Inaudible], will you arraign the defendant?

THE CLERK: Mr. Scott, have you seen a copy of this indictment?

THE DEFENDANT: I have.

THE COURT: Have you discussed it with your attorney?

THE DEFENDANT: Yes.

THE COURT: Would you like me to read the indictment to you?

THE DEFENDANT: No.

THE COURT: How do you plead?

THE DEFENDANT: Not guilty.

THE COURT: Is there a date for a conference with the assigned district judge?

MS. LOZANO: Yes, Your Honor. This case is assigned to Judge Ramos and we are tentatively scheduled for an in show appearance Thursday morning at 10:30 subject to confirmation of Mr. Devlin-Brown's schedule.

THE COURT: Thank you. Have both parties received a copy of the Pretrial Services Report?

MR. DEVLIN-BROWN: Yes, Your Honor.

MS. LOZANO: Yes, Your Honor.

THE COURT: Let's turn to the issue of bail. I'll hear from the Government first.

MS. LOZANO: Yes, Your Honor. The Government believes that detention is warranted in this matter as the defendant poses a significant flight risk due to his extensive financial resources and the fact that he is a dual citizen of the United States and Germany.

By way of background, he is charged in a one count indictment charging him with a money laundering conspiracy under both a domestic concealment and an international concealment theory, both of those theories.

The period of the crime spans several years from 2016 to 2018 and the total amount of proceeds laundered is estimated to be approximately $400 million. The proceeds come from an international purported crypto currency fraud scheme and the evidence has established that defendant Scott set up several -- a series of hedge funds internationally with accounts in several international jurisdictions including the Caymans and Ireland for the purpose of laundering criminal proceeds of the monies collected from the victims of fraud and funneling those proceeds back to the founders of the fraud scheme.

As I mentioned he is a dual U.S./German citizen.

When the search warrant was executed at his residence in Florida the authorities seized his German passport and a German driver's license. The Government believes that his mother still lives in Germany and thus he has ties there.

Significantly, Article 16, Subdivision 2 of the German constitution prohibits extradition of German nationals and citizens. Therefore, if the defendant were to flee to Germany the Government would be unable to have him returned to face these charges.

Indeed the Government has reason to believe that one of his co-conspirators may have already fled to a jurisdiction that is unlikely to extradite to the U.S. Mr. Scott has extensive financial resources that would enable him to flee this jurisdiction and live comfortably outside of the United States. The investigation which has been several years long has revealed a dozen -- a network of dozens of international and national accounts possessed by and controlled by Mr. Scott, the majority of which were used in the laundering conspiracy charge here.

In connection with this indictment and arrest, the Government has also seized or restrained over 25 accounts both domestic and international and we have demonstrated in order to obtain those warrants and orders that the monies in those accounts and that those accounts were used to launder proceeds.

We are doubtful that we have a full accounting of all of the financial resources that Mr. Scott has available to him. Recently the Government has learned that Mr. Scott filed report of foreign bank and financial accounts or FBARs with the Government detailing the foreign accounts that he had overseas as of year end 2017. He did identify certain Cayman and Swiss accounts but he failed to identify other foreign accounts that we know exist because we have bank account statements for those accounts and they have significant use in the money laundering scheme and conspiracy. Specifically bank accounts in Ireland that moved tens of millions of dollars.

The defendant is an attorney and he has experience setting up hedge funds and investing monies and moving money and he used that experience to set up this money laundering network in conjunction with his co-conspirators.

In the course of the conspiracy he also lied to banks and to a fund administrator to further effectuate and move the -- to further effectuate the crime and move the proceeds. He lied about the true purposes of the hedge funds and the origins of the monies flowing through those hedge funds and those accounts.

The investigation has uncovered extensive financial transactions and we have painstakingly traced and detailed those transactions through bank accounts, international bank accounts as well as domestic bank accounts and we have records

of those transactions.

We have also -- we have also reviewed email evidence among the co-conspirators relating to the money laundering conspiracy. Ultimately Mr. Scott’s role was to move the money from the victims of the fraud through many different shell companies and accounts that he set up and controlled in order to funnel the money back to -- funnel the money back to the founders of the fraud. He himself of course took a fee and kept some of the money.

He has no contacts in this district or in this state that the Government knows of. He does have multiple residences in Massachusetts, specifically in Cape Cod, one in Florida, and he is -- and he is the director of multiple companies, dozens of companies actually in Florida, Massachusetts and the British Virgin Islands.

While this is not a violent crime and the Government doesn’t contend that this is a violent crime so we’re not seeking detention on that basis, the Government does want the Court to know and does note that in Massachusetts when Mr. Scott was arrested he had a loaded gun in his car. He was arrested while driving and he had a loaded gun in his car. There was also a loaded gun in his home in the vicinity of a 15 month old child and Mr. Scott’s wife was arrested for that.

There were also two other firearms in the Massachusetts home. The Florida home contained a total of

five loaded -- five handguns, four of which were loaded. While the Government has not done a complete analysis of the sentencing guidelines that would be applicable to this matter, a rough back of the envelope calculation shows that the guidelines would be -- would give Mr. Scott a 44 on the scale absent a plea and 41 given a timely plea and that's mostly taking into account the amount of money involved as well as the fact that he is an attorney and he has the special skills of an attorney.

However, because the guidelines range for those numbers far exceed the statutory maximum for money laundering conspiracy which is 20 years practically speaking the maximum would be 20 years.

So, in sum, the Government strongly believes that he is a flight risk. He has the means. He has the motivation and he has somewhere to go that is a place that will not return him to the United States.

I note that we have two Pretrial Services reports, one from Massachusetts and one from New York. The Massachusetts report recommends detention based on many of the factors that I have just articulated and I note that that report appears to be more in-depth and detailed in both his interview and the summary report.

In sum, the Government believe that there is no condition or a combination of conditions that would reasonably

assure that Mr. Scott return to court and face these charges. So we're asking for detention.

THE COURT: Is Mr. Scott licensed to have firearms?

MS. LOZANO: My understanding is he is licensed to have firearms. I'm not sure whether each firearm was licensed.

MR. DEVLIN-BROWN: It was, Your Honor.

MS. LOZANO: But he does have licenses. We were aware that he had licenses for his firearms.

THE COURT: Thank you. Mr. Devlin-Brown.

MR. DEVLIN-BROWN: Thank you, Your Honor. This case isn't even close to one in our view that warrants detention. There are minimal risks of flight and those risks can be addressed by the standard conditions that are imposed in many white collar money laundering or fraud cases.

There's not a lot we know about the Government's charges because it's in a very bare bones indictment but I think there's some things we do know about Mr. Scott that I think fill in the picture a bit from what the Government has said.

So one thing the Government acknowledged is that Mr. Scott is an attorney. In fact, he's a licensed member of the New York Bar. He keeps up his registration. He's a member of the Florida Bar as well. He graduated from Boston University Law School and spent nearly two decades practicing law

including as a partner at Holland & Knight and Locke Lord. He's been practicing in the United States where he's been living and his practice was largely in the area of corporate transactions including particularly private equity work.

In 2015, late 2015 he left Locke Lord. He met some clients through the private equity work he did at Locke Lord and he decided like some people in the law do who I guess get tired of advising private equity firms and want to go into that line of work themselves he opened up a private equity firm.

So that part I think is very significant because much of what the Government has pointed out to as sort of suggestions that there must be something untoward like numerous bank accounts, numerous corporate entities, numerous investment companies, which were registered investment companies by the way, that's what private equity work is. For different deals you often establish different companies. So to take those facts and make them sinister on their face I don't think works at all.

Now, the accusations against Mr. Scott involve him allegedly laundering money from a crypto currency scam, and I think it's important and telling that the Government has not alleged at all that Mr. Scott had anything to do with this supposed crypto currency scam, knew it was a scam, played any role in recruiting investors to it or anything like that.

Instead the allegation seems to be that some portion of the investments that went through his fund, maybe they're saying all of them, I'm not sure, involved what were proceeds from other people engaged in a crypto currency scheme.

Now, he's presumed innocent on these charges. There's a heavy burden for a government to prove in a money laundering case that a lawyer and registered private equity investor and investment manager knew that the proceeds coming into his funds were proceeds of a criminal activity and that the transactions he engaged in were for the purposes of masking that activity. So that's I think a very heavy burden.

Now, in terms of risk of flight I'd like to address the various arguments that the Government has made. Let's start with the argument about dual citizenship. I think we need to understand Mr. Scott's background because his ties to the United States are extraordinarily extensive. Yes, Your Honor, he was born on a German -- on a U.S. Air Force or U.S. Army base in Germany or the hospital nearby because his father was in the service. So he has German citizenship. he has spent his entire adult life since age 18 when he went to college here. Before that he was back and forth in the United States. His law practice is in the United States. There's nothing that he has in Germany any more other than his ailing mother who is likely going to not survive, in the near term, cancer. But there's no life he has in Germany.

So I'd also add that the idea the would flee there is frankly preposterous on its face. Germany is one of the countries that has been aggressively investigating the underlying crypto currency fraud. In fact, they raided the offices that people had in that country, the BOFEN, the German equivalent of the SEC has shut down operations there. So the idea that someone charged with similar offenses here would "flee to Germany" is rather absurd and I submit that the other individuals that the Government referred to who supposedly had fled they likely fled somewhere very far from Germany to avoid precisely those active investigations underway in Germany. So that's Germany.

The next argument the Government makes is with respect to dollars suggesting that there's great wealth or there may be some great wealth that Mr. Scott has overseas. This is a strange argument, Your Honor, and it's a completely unfair argument. I mean the Government has talked about their "painstaking" work tracing money through various accounts, getting seizure warrants on accounts in the United States and overseas. They acknowledge in fact that some of these accounts Mr. Scott was not remotely trying to hide at all. They were on his FBARs and as to whether those particular other ones were not and whether they had to be on the FBARs or whether they met some requirement where they didn't need to be that's beyond the scope of what we can get into here.

But the Government has done a great job it seems identifying his criminal accounts. In fat, all of the -- his allegedly criminal accounts. All of the assets they've seized in the U.S. and not seized they've made a point of which ones they've been able to trace assets into and which ones they haven't.

To sort of put the burden on Mr. Scott to prove a negative, that there's no other assets out there that they don't know, that's unfair. It's unfair to put that burden on the defense generally and particularly proving a negative with respect to financial transactions.

So this is different if the Government wants to get up and say we have -- we weren't able to seize it but we have certain evidence of an account in Iceland or we have certain evidence of an account in Russia. If they want to proffer evidence that establishes that they think there's these hidden accounts out there we could hear it and address it but to sort of put the burden on Mr. Scott is not fair.

I want to address a couple of other arguments the Government made. One is they noted -- they allege that he lied to financial institutions or others in connection with this scheme. Well, Your Honor, that's essentially what money laundering is. it's being deceitful about money you're moving. That same argument could presumably apply in every single or almost every single money laundering case. In fact,

in most fraud cases you could make the argument that the alleged offense involves statements that are not true. So I don't think that argument gets them very far.

They make another argument that there's no -- not sufficient contacts in the Southern District of New York. Well, on that point we acknowledge. It's also not clear from the face of the indictment what if any venue there is in the Southern District of New York for this case which is based on a crypto currency alleged scheme that involved almost entirely we understand European investors and investments for these European investors that while Mr. Scott was here in the U.S. the investments were in Euros and were not in the U.S. So yes, he doesn't have -- he didn't happen to have a home in the district that decided that they would make this a federal case in the Southern District of New York but he has a home in Florida where he's been his entire adult life. He has property in Massachusetts, both a vacation home and extensive other property he's purchased for ongoing investments.

His wife is here, Your Honor. His wife is a U.S. citizen. She's not a German citizen. They have a 15 month year old son. They're trying to have more children. His entire life has been living openly here in the United States.

Now, I think there have been again this alleged crypto currency scheme. This has been reported as a supposed scam for years. There's been reports of people leaving if you

look on the internet and disappearing. So Mr. Scott was not living like that. He's been living as he has been openly in the United States all of this time and he has sufficient contacts in Massachusetts and in Florida and could establish whatever contacts are needed here or whatever travel requirements are needed here to address those.

I do want to touch on the gun issue briefly. I spoke at the end to confirm the guns are registered. I believe it's incorrect the statement that there were four loaded guns in Florida. For one thing, the guns were in a safe is our understanding. Several of the guns are not meant to be fired. He collects guns. That's a legal thing to do in the United States. And to the extent -- the argument by the way that the gun in Cape Cod was in the vicinity of his son, his son was not anywhere in the room. The particular circumstances that led that gun to be out involved the timing of when the FBI agents came to make the arrest.

But be that as it may, Your Honor, Mr. Scott has no problems surrendering -- it sounds like they have all the firearms but giving up all of the firearms and any right to have a firearm during the pendency of Pretrial Services.

So where does that leave us, Your Honor? You have a U.S. citizen who's been in this country his entire adult life, has a legal career here. He's still a practicing lawyer. He's had a private equity career here. Yes, he's accused of a

crime but there's not evidence there's no conditions that could satisfy his continuing stay in the United States and in fact there are certainly sufficient conditions such as a bond in -- for perhaps an amount of $1 million, two co-signers. Pretrial recommends three. Either would be fine. But those conditions, particularly when the Government has seized his other funds would give incentive for Mr. Scott to stay. He has nothing other than his life here in the U.S. and to suggest that because he's been accused of money laundering there's no set of conditions that could release him or because his father happened to have given -- had children while stationed in the army in Germany I think is manifestly unfair. Thank you.

THE COURT: You're welcome. Anything else on behalf of the Government?

MS. LOZANO: No, Your Honor.

THE COURT: When a request is made that a person be detained without bail pending the resolution of a criminal action several factors that are outlined, 18 U.S.C. Section 3142 have to be considered by the Court, the nature of the charged offense, the background of the accused, his or her ties to the community, family ties, employment history, if any, prior criminal history, if any, whether at the time of the charged offense the accused is under the supervision of the parole or probation entity is to be considered. The

strength of the evidence against the accused is also to be considered.

As has been indicated this case involves [inaudible] use of money laundering. Although the accused does not have ties to this judicial district he does have ties to other districts where he has a residence.

It is proffered that the defendant has access to funds that would enable him, substantial funds that would enable him to flee. It's proffered that he has dual citizenship and if he were to be at liberty and flee to Germany one of the countries where he holds citizenship he would not be able to be returned to the United States through an extradition process.

There's no criminal history, prior criminal history in the accused's background. The information that has been proffered to me during this proceeding and the information provided to me through the Pretrial Services Reports that were prepared suggest to me that there are conditions that could be fashioned to permit Mr. Scott to be at liberty pending the disposition of the charged offense.

So I'm going to deny the application that he be denied with -- excuse me, be detained without bail.

[Pause in proceedings.]

THE COURT: The following are the bail conditions for Mr. Scott. $1 million personal recognizance bond. The

bond is to be co-signed by two financially responsible persons and secured by $200,000 cash or property. His travel is restricted to the Southern District of Florida, the Southern and Eastern Districts of New York. He'll surrender all travel documents he may possess and not seek or obtain any new or replacement travel documents while the criminal action is pending. Be subject to Pretrial supervision at the level determined by the Pretrial Services Office.

If he satisfies the bail conditions he must submit to a urinalysis performed by the Pretrial Services Office. If the result is positive for the presence of a controlled substance then additional drug testing and treatment may ensue at the discretion at the discretion of the Pretrial Services Office.

Mr. Scott will be subject to home detention with electronic monitoring. He may not possess any firearms or destructive devices while the criminal action is pending.

He must satisfy all the bail conditions prior to his release.

Sir, if you satisfy the bail conditions and are at liberty you must appear in court whenever you are directed to do so. If you fail to do so you and any co-signers on your bond will be liable to the Government for the full amount of the bond. Any money or property posted in support of a bond would be forfeited to the Government. A warrant may issue for

your arrest and you may expose yourself to a new charge in connection with your failure to appear in court which would have a penalty independent of any penalty that might be imposed upon you should you be found guilty of the offense outlined in the indictment. Do you understand, sir?

THE DEFENDANT: Understood, Your Honor.

THE COURT: Is there anything else that we need to address?

MS. LOZANO: Yes, Your Honor. The Government is asking for a stay of the Court's order so we have an opportunity to appeal Your Honor's bail determination before Judge Ramos on Thursday.

THE COURT: Why are you waiting until Thursday?

MS. LOZANO: Because our understanding is we initially had a conference scheduled tomorrow morning with Judge Ramos and we were told that the Marshals could not produce Mr. Scott tomorrow morning. So we --

THE COURT: I have directed that he be detained until he satisfies all the bail conditions and if you think that there's a reason to make an application to challenge the conditions you should make that expeditiously. So I'm not going to stay the conditions. I don't see any reason to stay them since he'll be held until he satisfies them and there's plenty of time between now and tomorrow or the next day if you think that there's a reason to challenge the conditions for

you to make an application to the assigned district judge.

MS. LOZANO: Yes, Your Honor.

THE COURT: Anything else from either party?

MR. DEVLIN-BROWN: No, Your Honor. Thank you.

THE COURT: Thank you. Good day.

MS. LOZANO: Thank you.

* * * * *

I certify that the foregoing is a court transcript from an electronic sound recording of the proceedings in the above-entitled matter.

Shari Riemer, CET-805

Dated: September 12, 2018