

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 10, 2024

**BY ECF**
The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States v. William Morro*, 17 Cr. 630 (ER)

Dear Judge Ramos:

    The Government respectfully submits this letter in advance of the October 18, 2024, sentencing of defendant William Morro. For the reasons set forth below, a sentence within the stipulated Guidelines range of zero to six months' imprisonment (the "Stipulated Guidelines Range") is sufficient but not greater than necessary to serve the purposes of sentencing.

    **I.**    **The Offense Conduct**

        **A.**  **The OneCoin Scheme**

    Having presided over the trial against Mark Scott and sentenced a number of defendants who participated in various facets of the OneCoin scheme, the Court is familiar with the OneCoin scheme. For this reason, the Government does not summarize the details of the scheme here, and instead relies on the description of the scheme as set forth in the Government's sentencing submission for Greenwood. *See* Dkt. No. 570. For ease of reference, the Government has included a brief summary of the OneCoin scheme below.

    Co-defendants Greenwood and Ruja Ignatova ("Ruja") conceived of and orchestrated a multibillion-dollar fraud scheme by which they defrauded millions of individual OneCoin investors (the "OneCoin Fraud Scheme"). Greenwood and Ruja co-founded OneCoin Ltd. ("OneCoin") in 2014. OneCoin was based in Sofia, Bulgaria. OneCoin marketed and sold a fraudulent cryptocurrency by the same name. Between the fourth quarter of 2014 and the fourth quarter of 2016 alone, the scheme took in more than $4 billion from at least 3.5 million victims.

    While Greenwood and Ruja marketed OneCoin as a legitimate cryptocurrency like Bitcoin and deliberately drew the comparison between the two cryptocurrencies through their representations to investors and their marketing materials, OneCoin had no actual value and was conceived of by Greenwood and Ruja as a fraud from day one. The misrepresentations made by

Greenwood and others to OneCoin investors were legion, and the cryptocurrency was worthless. Among other things, OneCoin lied to its members about how its cryptocurrency was valued, claiming that the price of OneCoin was based on market supply and demand, when in fact OneCoin itself arbitrarily set the value of the coin without regard to market forces. The purported value of a OneCoin grew steadily from €0.50 to approximately €29.95 per coin, as of in or about January 2019. The purported price of OneCoins never decreased in value.

### B. Armenta's Money Laundering Activity

Gilbert Armenta, a U.S. citizen residing in Florida, was one of the key money launderers for OneCoin proceeds, and he helped transfer those funds all around the world. Between 2015 and 2017, Armenta generally used bank accounts in the names of two of his businesses, "Zala Group" and "Fates Group," as part of the money laundering process. Armenta was at times assisted by Christopher Hamilton and Robert MacDonald, nationals of the United Kingdom who used bank and currency trading accounts in the name of their business, "Viola Asset Management," to launder OneCoin proceeds. In total, Armenta laundered approximately $300 million of OneCoin proceeds, and he laundered approximately $140 million of that sum through U.S. bank accounts held by Zala and Fates.

### C. The Defendant's Offense Conduct

The defendant knew Armenta from prior business dealings, including prospective and actual investments. Armenta was aware that the defendant controlled companies in China (the "China Companies") with the capability to receive funds in local currency and exchange them for Western currencies outside China. In early 2016, Armenta requested that the defendant use the China Companies to do this for Greenwood and other affiliates of OneCoin whom Armenta knew; the defendant agreed. In early 2016, the bank accounts for the China Companies received approximately RMB 640 million (approximately $105 million) of OneCoin proceeds, although at the defendant's direction, only a portion of that money was ultimately transferred out of the bank accounts for the China Companies. At the defendant's direction, in a complex series of transactions in April 2016, the China Companies transferred RMB 222 million (approximately $35 million) in funds received from OneCoin affiliates to a Hong Kong account owned by Viola Asset Management. Of the funds received by Viola Asset Management in Hong Kong, $6.25 million was then transferred to the U.S. bank account of a company called WHI Inc. that the defendant controlled, and the defendant then transferred all of those funds to personal investments of Armenta.

The defendant and his co-conspirators did not inform the WHI's U.S. bank that the funds were derived from OneCoin, although they were aware that the funds were from OneCoin and knew that the U.S. bank would want to know that fact. The defendant did not directly profit from his role in the scheme, but it was understood that Armenta would provide him with additional business opportunities in exchange for his assistance.

II. ███████████████████████████[1]



III. **Procedural History and Other Sentences Imposed**

The defendant was not charged before he pleaded guilty to an information charging him with bank fraud conspiracy in violation of 18 U.S.C. § 371 on April 23, 2024.

There is no dispute as to the Guidelines Range. The base offense level for the bank fraud conspiracy is six; no levels are added for loss; the offense level is increased to 12 because a substantial part of the scheme was committed from outside the United States; two levels are subtracted because the defendant is a zero-point offender who meets the other relevant criteria; and two levels are subtracted because the defendant accepted responsibility for his crime. The defendant has no prior convictions, and is in criminal history category I. His resulting Guideline range is zero to six months' imprisonment.

Morro is the seventh defendant to be sentenced in the case:

- On October 19, 2021, David Pike was sentenced to a term of probation of two years. Pike's Guidelines range was 6 to 12 months.

- On February 16, 2023, Gilbert Armenta was sentenced to a term of imprisonment of 60 months. Armenta's Guidelines range was 1,200 months. Armenta also entered into a cooperation agreement with the Government, but he committed additional crimes after entering into his cooperation agreement and the Government did not provide him with a Section 5K1.1 letter.

- On September 12, 2023, Karl Sebastian Greenwood, a cofounder of the OneCoin scheme, was sentenced to a term of imprisonment of 240 months. Greenwood's Guidelines range was 720 months.

- On January 25, 2024, Mark Scott was sentenced to a term of imprisonment of 120 months. Scott's Guidelines range was 600 months.

- On March 7, 2024, Konstantin Ignatov was sentenced to a term of imprisonment of time served. Ignatov's Guidelines range was 1,080 months. Ignatov entered into a cooperation

---

[1] ███████████████████████████████████████.

agreement with the Government, but he committed perjury during his testimony at the trial against Mark Scott (after entering into his cooperation agreement) and the Government did not provide him with a Section 5K1.1 letter.

- On April 3, 2024, Irina Dilkinska was sentenced to a term of imprisonment of 48 months. Dilkinska's Guidelines Range was 120 months, which was the statutory maximum.

Probation recommends a sentence of probation, and the defendant requests a sentence of probation.

### IV.  The Appropriate Sentence

#### A.  Applicable Law

While advisory following *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines remain "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). That is because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id.* at 46. For that reason, "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

In imposing a sentence, the Court must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)–(7). *See Gall,* 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant;
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

#### B.  The Court Should Impose a Sentence within the Stipulated Guidelines Range

The defendant's crime was serious. Bank accounts he controlled in China received approximately $105 million in OneCoin proceeds, $35 million of that was transferred to a Hong

Kong account controlled by OneCoin money launderers, and $6.25 million of the $35 million was sent to a United States bank account the defendant controlled. The defendant did not inform the U.S. bank that the funds were OneCoin proceeds, although he understood that the bank would likely want to know that fact.

On the other hand, there are several mitigating factors in the defendant's favor: he did not receive any direct financial benefit from the scheme, he was not directly involved in the sale of OneCoin to actual customers, he was not charged with money laundering, his involvement was of relatively limited duration, ███████████████████████████████████████.

As a result, Morro is plainly far less culpable than most of the defendants the Court has already sentenced. Armenta, Greenwood, Ignatov, Scott, and Dilkinska are all much more culpable than he is. Morro is approximately as culpable as David Pike, and perhaps marginally less culpable than him. Morro and Pike both pleaded guilty to bank fraud, and took actions that assisted two of the primary OneCoin money launderers—Armenta in Morro's case and Scott in Pike's case. This Court previously sentenced Pike to a term of probation.

For those reasons a sentence within the Stipulated Guidelines Range of zero to six is sufficient but no more than necessary to serve the purposes of sentencing.

### C. The Court Should Impose a Fine within the Stipulated Guidelines Range

The Court should impose a fine within the Guidelines range of $2,000 to $20,000, particularly if the Court imposes a sentence of probation. The defendant has substantial assets, PSR ¶ 128, and is not subject to a restitution or forfeiture judgment. He was involved in the transfers of large amounts of money derived in the OneCoin fraud, and the Guidelines range for a fine is small in comparison to those amounts. A fine within that Guidelines range would show that that there are consequences for actions like the defendants.

## V. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of zero to six months.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: /s/
Kevin Mead
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2211/2314

cc:   All Counsel of Record (ECF)