UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

United States of America,

          Plaintiff,

v.

Mark S. Scott,

          Defendant.

---

Marietta Halle,

          Third-Party Petitioner

Case No. 1:17-cr-00630-ER

---

### MARIETTA HALLE'S NOTICE OF CLAIM AND VERIFIED THIRD-PARTY PETITION FOR ANCILLARY HEARING

Petitioner, Mariettta Halle, by and through undersigned counsel and pursuant to *21 U.S.C. § 853(n)(2)(6)(A)(B)*, *18 U.S.C. § 982(b)(1)*, and *Rule 32.2(c)* of the *Federal Rules of Criminal Procedure*, hereby provides formal notice to the Court and the Government of her claim/legal interest, as a third party, in property subject to the Court's Preliminary Order of Forfeiture in the above referenced matter. As grounds in support of the instant Verified Petition, Ms. Halle submits as follows:

### BACKGROUND

1.      Mark Scott was Petitioner's late husband's lawyer and, when her husband unexpectedly passed away, on May 20, 2015, Ms. Halle was a widow, in a foreign country (she lived in Austria before arriving in the United States), with a minor child. The circumstances were quite intimidating and Mark Scott – exploiting the trust her husband

1

placed in him – stepped forward to assist her. In the process, he earned Ms. Halle's trust and loyalty.

2.      Ms. Halle's husband was an executive in the European gaming industry. He made a handsome living and left her well provided for. He was also a loving companion and father. Understandably, Ms. Halle had no one else to turn to upon her husband's demise and she quickly came to depend upon the counsel of Mark Scott who was, back then, a respected partner in a prestigious law firm.

3.      Along the way, Mr. Scott encouraged Ms. Halle to invest in various ventures. Given the trust she placed in him, she agreed, and at one point, Ms. Halle had invested over two million dollars ($2,000,000.00) with Mr. Scott.

## SURETY CONSEQUENCES

4.      Trusting Mr. Scott as her loyal advisor, and naïve to the workings of America's criminal justice system, Ms. Halle also provided $750,000.00 to Mr. Scott for his bail (Exhibit **1**). After all, this was her husband's trusted counsel, who assured Ms. Halle it was all a misunderstanding, and he would surely be exonerated.

5.      The Government's response was predictable; a subpoena (Exhibit **2**) to Ms. Halle and a full-blown inquiry into her background. Undaunted, and believing she was doing the right thing for a dedicated professional to her and her late husband, Ms. Halle retained undersigned counsel and fearlessly agreed to enter the lion's den.

6.      On November 20, 2018, Ms. Halle responded to the United State's Attorney's Office for the Southern District of New York, where she endured a full session, attended by several AUSAs and agents, pursuant to a Use Immunity Agreement, otherwise known as a "Queen for a Day" letter (Exhibit **3**). The inquiry did not stop there, however. But, after additional subpoenas for documents to Ms. Halle (Exhibit **4**), as well

as for Ms. Halle's various banks, service providers, and accounting records (Exhibit **5**), the Government concluded Ms. Halle's dedication to Mr. Scott was genuine (but, nonetheless, misguided).

7.      Consistent with her sense of loyalty, on or about August 20, 2019, given Mark Scott's beseechments, Ms. Halle also advanced[1] $500.000.00 to Mr. Scott to retain his current counsel of record (Exhibit **6**).

<strong>RECOGNITION OF DECEITFULLNESS</strong>

8**.**      Owing to what she believed was a moral commitment, during a time of need on behalf of a trusted advisor, Ms. Halle remained resolute in her support for Mr. Scott. Following her debriefing session with the Government, she engaged in extensive discussions with undersigned counsel, which included her history with Mr. Scott, the investments he solicited from her, the documentation related to the investments, and the Government's case against Mr. Scott. At first, Ms. Halle dismissed various inconsistencies as simple oversights. At some point, however, despite painstakingly slow recognition, Ms. Halle realized the oversights were, in fact, misrepresentations. That was a game changer.

---

[1]      According to New York substantive law, immediately upon receipt of those funds, a constructive trust was created in favor of Ms. Halle. *See, e.g.*, *United States v. Lee*, 232 F. 3d 556, 562 (7th Cir. 2000) (state substantive law to be applied by District Court). *See also*, *United States v. Kurland*, 2022 WL 2047170 (E.D.N.Y. 6/7/22), *affirmed*, 2024 WL 5165547 (2nd DCA 2024). The four elements ideally but unnecessary to establish a constructive trust – all of which are present here – are "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment." *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 362 (2d Cir. 1999).

9.    After filing an *Ex-Parte* Motion for Exoneration of Surety – which the Government did not oppose, and the Court granted[2] – Ms. Halle's next undertaking was as a witness, on behalf of the Government, at a subsequent Motion to Revoke Mark Scott's Bond.[3]  The Court granted the Government's Motion and remanded Mr. Scott.

10.    Ultimately acknowledging Ms. Halle's *bona fide* Third-Party Interests, on 08/26/2021, the Government agreed to the entry of a Consent Order for the Interlocutory Sale of Real Property, recognizing Ms. Halle's 43.29% interest in MSSi's 105 Sunset Lane, Barnstable, Massachusetts, 02630, which was subsequently sold and Ms. Halle's interest in the real property disbursed and satisfied  (Exhibit **9**).

## PETITION FOR ANCILLARY HEARING

11.    Ms. Halle, Third-Party Petitioner, hereby asserts her interest in the following property, specifically identified in the Court's Preliminary Order of Forfeiture (and so identified below), and requests a hearing wherein Petitioner may testify, present evidence, and witnesses to establish the *bona fides* of her claim:[4]

**Offense Property**:

_____

[2]    In her supporting Affidavit (Exhibit **7,** ¶ 8), Ms. Halle explicitly described her evolution from supporter to denouncer of Mark Scott.

[3]    CM/ECF filed on March 12, 2020 (Exhibit **8**).

[4]    "…[A] third party petitioner can demonstrate a superior legal interest under Section 853(n)(6)(A) where the petitioner can establish the existence of a constructive trust for the benefit of a victim of crime." *U.S. v. Dupree*, 919 F.Supp.2d 254, 269 (E.D.N.Y. 2013); *U.S. v. Shefton*, 548 F.3d 1360, 1366 (11th Cir. 2008) ("[W]e agree with the majority of circuits that have held that a constructive trust can serve as a superior legal interest under § 853(n)(6)(A) and thus can serve as grounds for invalidating a criminal forfeiture order.").

z.    Residence, 600 Coral Way, Suite/Floor 12, Segovia Tower, Coral Gables, Florida, 33134.

**Substitute Assets**:

e.    Appurtenances found within (z), above, i-viii.

### FACTS IN SUPPORT OF MS. HALLE'S PETITION[5]

The Indictment alleges Mark Scott's criminal conduct began "…in or about September 2015 through 2018.[6]

The Government submits, in its August 31, 2020, Letter Memorandum in Support of its' Application for a Preliminary Order of Forfeiture (Exhibit **11**, pg. 3, last ¶), that "[Mr.] Scott used OneCoin Scheme proceeds to pay off over $1,000,000 for a condo that he **owned** in Coral Gables, FL (emphasis added)."   The exact amount was ultimately determined to be $1,000,794.66 paid by Mr. Scott, in 2016.[7]   In the Government's August 25, 2021, Letter Memorandum in Response to Mr. Scott's opposition to the Government's application for a preliminary order of forfeiture, they said the following about the tainted money Mr. Scott used toward the payment of his mortgage on the property:[8]

---

[5]    For ease of reference, a timeline chronology is attached (Exhibit **10**).

[6]    That was also the Government's position in its August 31, 2020, letter memorandum in support of its application for a preliminary order of forfeiture (Exhibit **11**, pg. 2, § II, ¶ 1).

[7]    "A central tenet of forfeiture proceeding is that the Government 'stands in the defendant's shoes' when it acquires a defendant's interest in a particular property. *U.S. v. Kogan*, 16 Cr. 221 (KPF) (S.D.N.Y. 2022). *See also*, *U.S. v. Nektalov*, 440 F. Supp. 2d 287, 295 (S.D.N.Y. 2006). "Whether the property is tainted or substitute, the Government may only seize an interest belonging to the defendant." *U.S. v. Kurland*, 20 Cr-306 (NGG) (E.D.N.Y. 2025); *U.S. v. Daugerdas*, 892 F.3d 545, 553 (2d Cir.2018).

[8]    Exhibit **12**, pg. 8, ¶ 2.

> In the event that the Court finds that the entire 600 Coral Way Property is not subject to forfeiture as property traceable to the offense, a portion of the property is still subject to forfeiture under § 982(a)(1). Specifically, the Government is still entitled to [a] the $1,000,794.66 that was indisputably derived from the OneCoin scheme, which Scott used to pay off the mortgage, or [b] if the value of the property has increased, as sum equal to $1,000,794.66 plus a proportional percentage of the increase in the value of the property.

On August 14, 2019, Ms. Halle extended a $500,000.00 secured loan (Exhibit **13**) to Mr. Scott to retain his current counsel of record. Like all other occasions upon which Ms. Halle either invested with, or extended loans to, Mr. Scott, he secured the loan through misrepresentations. As a result, following Ms. Halle's eye-opening cooperation with the Government – and with the Government's knowledge – Ms. Halle sued Mr. Scott in Miami-Dade County Circuit Court. It resulted in an October 13, 2021, Agreed Final Consent Judgment against Mr. Scott for $1,340,000.00, plus interest at the rate of 8% per annum (Exhibit **14**).

## THIRD PARTY INTEREST SUPERIOR TO DEFENDANT

While Mr. Scott entered upon criminal conduct in September of 2015 – and used the proceeds of that activity to pay down the residence mortgage in 2016 – as to the equity in the property that, by the Government's own acknowledgment, he owned ***prior*** to September 2015, Ms. Halle's interest, given her final consent judgement, remains superior to the interest of Mr. Scott[9].

---

[9]     Not only as to Mr. Scott but to his wife, Lydia Kolesnikova, as well.

## MEMORANDUM

As noted in the Court's September 1, 2020, Preliminary Order of Forfeiture, the Government was obligated to "notify any person who reasonably appears to be a potential claimant of their interest therein." *Rule 32.2(b)(6)(A)*, of the *Federal Rules of Criminal Procedure*, requires nothing less. While the Court's Preliminary Order of Forfeiture notes that the Government must publish notice on the "…official government internet forfeiture site, www.forfeiture.gov[10]," in this instance, the Government's burden is higher. When the Government knows or reasonably should know whom to notify, they must attempt to provide direct notice of the proceeding. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.306, 318-19 (1950). *See also, Mennonite Bd. Of Missions v. Adams*, 462 U.S. 791, 797-98 (1983); *Schroeder v. City of New York*, 371 U.S. 208 (1962).

Given the role Petitioner played in not only being debriefed by the Government back in 2018, but appearing as a Government witness at Mark Scott's Bond Revocation Hearing on March 12, 2020, as well as contemporaneously arguing and prevailing on her Motion for Exoneration of Surety, it would be folly to submit the Government was not aware of Ms. Halle's interest in various forfeited properties. Further, having maintained constant contact with the Government throughout the Mark Scott prosecution, the Government – at a minimum – could have sent notice to undersigned counsel. Nonetheless, to date, no formal notice has ever been delivered to Ms. Halle or her counsel. Accordingly, Ms. Halle respectfully submits her Petition is timely.

---

[10]    A diligent search of the website fails to produce any indica of notice to Petitioner.

## UNTAINTED EQUITY[11] IN PROPERTY NOT FORFEITABLE

Instances of criminal forfeiture of the equity in real property – attributable to the use of criminal proceeds – is quite common. A perfect example can be found in *United States v. Leonard Wolf*, 375 F. Supp.3d 428 (S.D.N.Y. 2019). In a clear and cogent opinion[12] and order, the Honorable Kimba M. Wood traces the history of such forfeiture and, along the way, makes some critical acknowledgements. Among other things, Judge Wood makes the following declarations:

A.   The forfeited amounts "…represent the amount of crime proceeds used toward the maintenance and renovation of the Properties." *Id.* at 432;

B.   "Because the Properties were owned jointly with [his wife], the Government  sought only the interests it believed to be [defendant's]."  Once forfeited, the Substitute Assets would be applied to the outstanding money judgments against [defendant]." *Id.* at 433;

C.   "Where a parcel of real property is involved, [21 USC] § 853 permits the forfeiture of a partial interest in that parcel; the statute does not require forfeiture of the entire parcel. *See Pacheco v. Serendensky*, 393 F.3d 348, 355 (2d Cir. 2004)" *Id.* at 435;

D.   "To prevail under [21 USC § 853(n)(6)(A)], a petitioner must establish, by a preponderance of the evidence, that she has a 'legal right, title, or interest' in the property to be forfeited…" *Id.* at 436;

E.   "'[T]he extent of the petitioner's interest in the [property to be forfeited] is determined in accordance with state law.'" [*United States v.*] *Watts*, 786 F.3d [152] at 161 (citing Willis, 652 F.3d at 242)." *Id.*;

F.   "When proceeds obtained as a result of a [criminal] violation are invested in real property, equivalent equity in that real property constitutes tainted property under § 853(a). *See, e.g., United States v. Totaro*, 345 F.3d 989,     996 (8th Cir. 2003) (holding that, where a

---

[11]   According to Zillow (Exhibit **15**), the FMV of the property is $3,022,900.

[12]   Rather than independently citing identical authority as the undersigned's work product, to attribute appropriate credit to Judge Wood, the opinion is quoted extensively, especially given the similar issues to the instant case.

real property's 'mortgage, real estate taxes and upkeep' were paid with criminal proceeds, equity in that property equivalent to the criminal proceeds used was forfeitable); *United States v. Caspersen*, 275 F.Supp.3d 502, 504 (S.D.N.Y. 2017) (Rakoff, J.) (holding that, 'the use of crime proceeds to pay off a [home equity line of credit] secured by real property results in the Government's acquisition of an interest in the real property to the extent of the payment'); [*United States v.*] *Peterson*, 820 F.Supp.2d [576 (S.D.N.Y. 2011)] at 584 (holding that, where a defendant paid his mortgage and funded renovations using criminal proceeds, equity in the real property in the amount of the proceeds invested was 'offense property')." *Id.*;

G.      "The absence of an innocent owner exception to criminal forfeiture under 21 U.S.C. § 853 does not imply that a court need not account for the interests of an innocent owner. …[C]riminal forfeiture under § 853 'reaches only the property of the criminal defendant,' and therefore 'there are no circumstances in which the property of an innocent owner is lawfully forfeited.' [U.S. v.] *Totaro*, 345 F.3d at 995; *see also* [*U.S. v.*] *Daugerdas*,      892 F.3d at 548 (Unlike civil forfeiture, which is an *in rem* action, 'criminal forfeiture is an *in personam* action in which *only the defendant's interest* in the property may be forfeited.' (quoting Fed. R. Crim. P. 32.2(b) advisory comm. notes (2000) (emphasis added) ); *von Hofe v. United States*, 492 F.3d 175, 190 (2d Cir. 2007) ('[A]n in personam forfeiture hinges on criminal conviction.'); *United States v. Lester*, 85 F.3d 1409,1414 n.8 (9th Cir. 1996)('Because a criminal forfeiture is an action against the convicted defendant, who by definition is not 'innocent,' there simply was no need to have an innocent-owner exception')" [.]

## SUPERIORITY OF PETITIONER'S INTEREST

This ancillary proceeding concerns the enforcement of Petitioner's valid, recorded judgment lien on the Coral Gables Condo (Exhibit **14**, *supra*).  The judgment lien arose from litigation commenced by Ms. Halle against Mr. Scott and his wife, Lidia Scott (hereinafter, "Ms. Kolesnikova", arising from the Scotts' alleged fraudulent conduct, in the case styled *Marietta Halle v. Mark Scott & Lidia Scott*, Case No. 2020-012112-CA-01, 11th Judicial Circuit in and for Miami-Dade County, Florida.  On October 12, 2021, Ms. Halle settled her claims against Mr. Scott and Ms. Kolesnikova, in a written mediated settlement agreement (Exhibit **16**).  The foundation of that bargain was that in exchange

9

for dismissing the lawsuit and releasing Mr. Scott and Ms. Ms. Kolesnikova from future lawsuits, Ms. Halle would receive an enforceable $1,340,000.00 final consent judgment against Mr. Scott. (Exhibit **14,** *supra*).  On October 13, 2021, the Final Consent Judgment was rendered by the Miami-Dade trial court. On November 4, 2021, the Final Consent Judgment was subsequently recorded in the land records of Miami-Dade County and perfected as a lien against the Coral Gables Condo under Florida law (Exhibit **14,** *supra*). Under the terms of the Final Consent Judgment, Petitioner was prohibited from executing upon that final judgment until Mr. Scott exhausted his appeal.  *Id.* at ¶ i – ¶ iii. Mr. Scott's appellate rights were exhausted on April 21, 2025, when the Second Circuit entered its order denying Mr. Scott's motion for rehearing and motion for rehearing *en banc. United States v. Scott*, 23-7199, Dkt. No. 93 (Exhibit **17**).

As explained below, Ms. Halle's judgment lien is a vested and superior encumbrance on the "Non-Forfeitable Equity" of the Coral Gables Condo. Any subsequent claims or defenses, including those raised by the Defendant's spouse, are defeated by the facts and the controlling law.  Based upon the following, Ms. Halle respectfully requests the Court enforce Ms. Halle's perfected property right.

## CHRONOLOGY OF SIGNIFICANT LEGAL EVENTS

The following sequence of events establishes the priority and validity of Ms. Halle's judgment lien:

| Date | Event | Legal Significance |
|---|---|---|
| **Jan. 14, 2015** | Scott acquires the Coral Gables Condo. | The condominium is acquired with legitimate funds, pre-dating any criminal conduct. The initial equity is untainted. |

| Sept. 2015 | Scott's criminal conduct commences. | Government's forfeiture interest in tainted proceeds attaches. |
|---|---|---|
| 2016 | Scott pays $1,000,794.66 of the mortgage with OneCoin proceeds. | The Government's quantifiable forfeiture interest is created. |
| Sept. 5, 2018 | Mark Scott is arrested in connection with the instant matter. | All parties have notice of potential forfeiture and creditor claims. |
| Oct. 30, 2018 | On this day, according to the Kolesnikova petition [Kolesnikova Petition; D.E. 675 at ¶11], Scott supposedly executes a tenancy by the entireties hereinafter "TBE") deed in her favor. Also on the same day, Scott executed a quitclaim deed, transferring all of his rights, title, and interest in the Coral Gables Condo to Kolesnikova [Kolesnikova Petition; D.E. 675 at ¶13]. | These post-arrest conveyances are a suspect attempt to shield the asset from creditors and forfeiture. |
| Aug. 13, 2019 | Kolesnikova co-signs a promissory note to Ms. Halle. | Ms. Kolesnikova personally obligates herself to the debt that forms the basis of the judgment, potentially compromising her "innocent spouse" status |
| Oct. 12, 2021 | Halle, Scott, and Kolesnikova execute the Mediated Settlement Agreement. | The agreement creates the right to a $1.34M Consent Judgment against Scott. |
| Oct. 13, 2021 | The $1,340,000 Final Consent Judgment is entered against Scott. | Halle's claim is liquidated establishing her as a judgment creditor. |
| Nov. 4, 2021 | Halle records the judgment, perfecting her lien against the | Halle's property interest in the property's title is secured. |

| | Coral Gables Residence under Florida law. | |
|---|---|---|

## THE SETTLEMENT AGREEMENT CREATED AN ENFORCEABLE CONTRACTUAL RIGHT TO A JUDGMENT LIEN

This dispute is governed by the language and intent of the October 2021 Mediated Settlement Agreement. A principle of contract law is that a settlement agreement must be interpreted to give effect to the parties' intent and to avoid a result that defeats the agreements intended purpose. *See, eg., Velleff v. Velleff*, 236 So. 3d 1179 (Fla. 5th DCA 2018). The settlement agreement states: "A $1,340,000.00 final consent judgment shall be entered and recorded against Mr. Scott." This is the operative clause. In exchange, Ms. Halle provided Mr. Scott and Ms. Kolesnikova releases from future lawsuits for conduct that preceded Ms. Halle's signature. These releases do not prohibit Ms. Halle from collecting on her perfected judgment lien on the Coral Gables Condo.

The first reason arises from the statutory framework governing judgment liens in Florida. It is set forth in Fla. Stat. § 55.10, which outlines the requirements for creating and maintaining judgment liens, including recordation and extension procedures. These provisions, contained in § 55.10(1) through § 55.10(5) ensure that the judgment lien remains attached to the property and enforceable against subsequent purchasers or creditors, <u>independent of the underlying debtor's personal obligations</u>. As such, a perfected judgment lien is a vested *in rem* property right, distinct and severable from the underlying personal obligations of Mr. Scott or Ms. Kolesnikova. As such, this ancillary proceeding initiated by Ms. Halle is not released because an action to enforce a property right against the Coral Gables Condominium (the "res") and not a new lawsuit to establish personal liability against Mr. Scott or Ms. Kolesnikova.

12

## MR. SCOTT'S POST-ARREST CONVEYANCES
## WERE FRAUDULENT TRANSFERS

Any claim to the Non-Forfeitable Equity by a third party based on the conveyances of October 30, 2018, must fail. On that date, Mr. Scott (curiously) executed two deeds. The first deed allegedly created a TBE including Kolesnikova. [Kolesnikova Petition; D.E. 675 at ¶11]. Scott's second transfer was a quitclaim deed transferring all of his right title and interest in the Coral Gables Condo to Kolesnikova. [Kolesnikova Petition; D.E. 675 at ¶13]. These conveyances are voidable under Florida's Uniform Fraudulent Transfer Act (FUFTA), Fla. Stat. § 726.105, as they were undoubtedly made by Mr. Scott with the "actual intent to hinder, delay, or defraud any creditor." Indeed, the circumstances of Mr. Scott's transfers exhibit multiple "badges of fraud" under the statute:

- **Transfer to an Insider** (§ 726.105(2)(a)): The transfers were to Mr. Scott's spouse.

- **Retention of Possession** (§ 726.105(2)(b)): Mr. Scott continued to live in and use the property after the transfers.

- **Transfer After Threat of Suit** (§ 726.105(2)(d)): The transfers occurred after Mr. Scott was arrested under a federal indictment.

- **Transfer of Substantially All Assets** (§ 726.105(2)(e)): The conveyances involved a primary asset of Mr. Scott and all of his interest in it.

- **Lack of Consideration** (§ 726.105(2)(h)): The transfers were made for no consideration.

Given these factors, the creation of the alleged TBE tenancy and the execution of the quitclaim deed were not acts of marital planning but an attempt to place Mr. Scott's asset beyond the reach of his creditors. The transfers are voidable, and Ms. Halle's perfected judgment lien should attach to Scott's interest in the Non-Forfeitable Equity as if the fraudulent transfers never occurred.

13

**PETITIONER'S LIEN HAS PRIORITY OVER SPOUSAL AND HOMESTEAD CLAIMS**

Florida's homestead and TBE laws afford protections to homeowners, but those protections are not absolute and do not apply under these facts.

## THE PROPERTY IS NOT SHIELDED FROM A
## DEBT OWED BY BOTH SPOUSES

Ms. Kolesnikova personally signed the August 13, 2019, promissory note to Ms. Halle, which formed the basis of the settled lawsuit. By signing, she obligated herself to Ms. Halle. While this debt has clearly merged into the final consent judgment and is no longer collectible against Ms. Kolesnikova, it is important, nonetheless. Equity will not permit a party to benefit from the status of an "innocent spouse" to defeat a creditor to achieve a windfall. *See, Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein*, 619 So. 2d 267, 271 (Fla. 1993) (homestead interest of the innocent spouse of the party whose conduct led to the unjust enrichment was also subject to the equitable lien.).

## THIS IS A PROCEEDING TO ENFORCE A LIEN; THE
## SETTLEMENT RELEASES DO NOT BAR IT

This ancillary hearing is a proceeding to determine the rights of various parties to a specific piece of property (the "res"), here, the Coral Gables Condo. Ms. Halle is not filing a new lawsuit or asserting a new claim against either Ms. Kolesnikova or Mr. Scott. She is enforcing a pre-existing property right—her judgment lien—against the Non-Forfeitable Equity of the Coral Gables Condo. Under Florida law, collection actions taken to enforce a judgment lien are not independent causes of action:

> Section 56.29, Florida Statutes (2004), described the procedure by which a person holding an unsatisfied execution could initiate proceedings supplementary to execution. Proceedings supplementary are post-judgment proceedings that permit a creditor to effectuate a judgment lien already existing; they are not independent causes of action. (internal citations omitted). The judgment here became a lien when Shaibani

14

recorded a certified copy of the judgment with Orange County Public Records. (internal citations omitted).

*Zureikat v. Shaibani*, 944 So. 2d 1019, 1022–23 (Fla. 5th DCA 2006) (emphasis added).

Further, under Florida Statute § 56.29

> "[t]he court may enter any orders required to carry out the purpose of [section 56.29] to subject property or property rights of any defendant to execution." § 56.29(9), Fla. Stat. (2004). <u>Proceedings supplementary "are equitable in nature and should be liberally construed.</u>" (internal citation omitted). They enable speedy and direct proceedings in the same court in which the judgment was recovered to better afford to a judgment creditor the most complete relief possible in satisfying the judgment. (internal citation omitted).

*Id.*, 944 So. 2d at 1023 (emphasis added).

### THE RELEASE OF LIDIA KOLESNIKOVA DOES NOT AFFECT HALLE'S JUDGMENT LIEN

The settlement agreement releases Ms. Kolesnikova from personal liability. Ms. Halle is not seeking to hold Ms. Kolesnikova personally liable. Instead, Ms. Halle asserts that Ms. Kolesnikova's claimed interest in the property, derived from a fraudulent conveyance from her husband, is inferior to Ms. Halle's perfected lien. The action is against the property interest, the Coral Gables Condo, not the person. Stated differently, the release bars Ms. Halle from suing Ms. Kolesnikova for a new money judgment; it does not cleanse a tainted title or prevent the enforcement of a valid lien against the Coral Gables property itself.

### THIS COURT HAS JURISDICTION TO ADJUDICATE PETITIONER'S INTEREST IN THE FLORIDA PROPERTY.

This Court's authority to adjudicate third-party interests in the Coral Gables Condo is established by 21 U.S.C. § 853 ("Criminal forfeitures").  Because this Court has jurisdiction over the instant defendant, Mark Scott, it has the authority to order the forfeiture of his assets, regardless of where they are located. *See*, 21 U.S.C. § 853(b)(1)

15

("<u>Property subject to criminal forfeiture under this section includes</u>--(1) <u>real property</u>, including things growing on, affixed to, and found in land . . .") (underlining added for emphasis).   Finally, while this federal court has jurisdiction to adjudicate the forfeiture, it will apply the substantive law of the real property's location—in this case, Florida—to determine the nature and priority of third-party interests. *See, e.g., Willis Mgmt. (Vermont), Ltd. v. United States,* 652 F.3d 236, 242 (2d Cir. 2011) (in proceedings under 21 U.S.C. § 853(n), "[s]tate law determines a petitioner's legal interest in the property at issue.")(internal citation omitted).

## CONCLUSION

Wherefore, Petitioner, Marietta Halle, respectfully requests this Court enter an order:

1. **Granting** an ancillary hearing to adjudicate Ms. Halle's interests;

2. **Declaring** Ms. Halle's perfected judgment lien is a superior encumbrance against the Non-Forfeitable Equity of the Coral Gables Condo, notwithstanding the post-arrest, fraudulent conveyances of Defendant Mark Scott; and

3. **Ordering** that upon the sale of the property, Ms. Halle's final consent judgment be satisfied from the proceeds remaining after satisfaction of the Government's forfeiture interest.

16

## *JURAT*

Pursuant to 28 USC § 1746, I declare under penalty of perjury under the laws of

the United States of America that the foregoing facts are true and correct.

By: _____

Marietta Halle

Executed on July 11, 2025

Respectfully submitted,

**Law offices of Neil G. Taylor, P.A.**
P.O. Box 1550
Bradenton, Florida, 34206
305/794-1575 (O)
941/748-0158 (Fax)
By: */s/ Neil G. Taylor*
Neil G. Taylor
NY Bar Reg. No.: 2075919
ngt@bellsouth.net
aduckett@grimesgalvano.com

QUARANTA P.A.
1600 Ponce de Leon Blvd.
10th Floor
Coral Gables, FL 33134
Telephone 305.930.6077
By: */s/ John M. Quaranta*
John M. Quaranta
Florida Bar No. 940641
john.quaranta@quaranta.law
barbara.menahem@quaranta.law
*Pro Hac Vice Admission Pending*

17